## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

| | |
|---|---|
| BERKLEY INSURANCE COMPANY, )<br>  )<br>        Plaintiff, )<br>  )<br>        v. )<br>  )<br>CARAWAY & BROOMBAUGH, PC )<br>f/k/a CARAWAY, FISHER & )<br>BROOMBAUGH, PC, )<br>JASON CARAWAY, AUTUMN )<br>CARAWAY, DANIEL BROOMBAUGH, )<br>TERRI HARMON, AMY WOLF, )<br>RAYMOND KACZUR, DEBRA )<br>KACZUR, ROBERT CARLILE, )<br>and DOES 1-25, )<br>  )<br>        Defendants. ) | Case No. 23-cv-1661 |

## **COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff, BERKLEY INSURANCE COMPANY ("BIC"), by and through its attorneys TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP, and for its Complaint for Declaratory Judgment against Defendants, CARAWAY & BROOMBAUGH, PC f/k/a CARAWAY, FISHER & BROOMBAUGH, PC, JASON CARAWAY, AUTUMN CARAWAY, DANIEL BROOMBAUGH, TERRI HARMON, AMY WOLF, RAYMOND KACZUR, DEBRA KACZUR, ROBERT CARLILE, and DOES 1-25, states as follows:

## **NATURE OF ACTION**

1. Plaintiff, BIC, is an insurance company that issued a Lawyers Professional Liability Policy, policy number PLP-1499184-P7, to Defendant, Caraway & Broombaugh, PC f/k/a Caraway, Fisher & Broombaugh, P.C. ("Caraway & Broombaugh"), for the policy period June 1, 2022, through June 1, 2023 (the "Policy"). A true and correct copy of the Policy is attached as **Exhibit A**.

2. BIC brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, *et seq*. and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration with respect to its duty to defend and indemnify Caraway & Broombaugh, Jason Caraway ("J. Caraway"), Daniel Broombaugh ("Broombaugh"), and Autumn Caraway ("A. Caraway"), under the Policy in connection with claims asserted against them related to circumstances in which one of Caraway & Broombaugh's attorneys, J. Caraway, took money from Caraway & Broombaugh's client trust account and cannot be located (the "Circumstances").

3. BIC received notice of two demand letters issued to Caraway & Broombaugh relating to the Circumstances: one sent on behalf of Defendant Amy Wolf ("Wolf"), and the other sent on behalf of Defendants Raymond Kaczur and Debra Kaczur (the "Kaczurs"). True and correct copies of those two letters (collectively, the "Demand Letters") are attached as **Exhibit B** and **Exhibit C**, respectively.

4. To date, BIC is aware of a two lawsuits brought against Caraway & Broombaugh in connection to the Circumstances styled.

5. The first lawsuit, brought by Defendant, Terri Harmon ("Harmon"), is styled *Terri Harmon v. Jason Caraway, and Caraway, Fisher & Broombaugh, P.C. and Autumn Caraway, as Respondent in Discovery*, Case No. 23LA0205, and filed in the Circuit Court Twentieth Judicial Circuit, St. Clair County, Illinois (the "*Harmon* Lawsuit"). A true and correct copy of the First Amended Complaint filed in the *Harmon* Lawsuit is attached as **Exhibit D**.

6. The second lawsuit, brought by Defendant, Robert Carlile ("Carlile"), is styled *Robert Carlile v. Jason Caraway and Caraway, Fisher & Broombaugh, P.C.*, Case No. 23LA0335, and filed in the Circuit Court Twentieth Judicial Circuit, St. Clair County, Illinois (the "*Carlile*

Lawsuit"). A true and correct copy of the Complaint filed in the *Carlile* Lawsuit is attached as **Exhibit E**.

7. BIC seeks a declaration that no coverage is available under the Policy, and that BIC has no obligation to defend or indemnify Caraway & Broombaugh, A. Caraway, or Broombaugh, in connection with the *Harmon* Lawsuit, the *Carlile* Lawsuit, the Demand Letters, or any other lawsuits, demand letters, or "Claims" regarding and/or relating to the Circumstances.

8. BIC seeks a further declaration that there is no coverage is available under the Policy, and that BIC has no obligation to defend or indemnify J. Caraway, in connection with the Demand Letters or any other lawsuits, demand letters, or "Claims" regarding and/or relating to the Circumstances.

9. There exists an actual and justiciable controversy among the parties concerning their respective rights, duties, and obligations under and pursuant to the Policy.

10. BIC has no adequate remedy at law and, therefore, desires a judicial determination of its rights and duties in accordance with the Policy. A judicial declaration is necessary and appropriate at this time so that BIC may ascertain its rights and duties with respect to defense and indemnity under the Policy in connection with the *Harmon* Lawsuit, the *Carlile* Lawsuit, the Demand Letters, or any other lawsuits, demand letters, or "Claims" regarding and/or relating to the Circumstances.

## JURISDICTION AND VENUE

11. Jurisdiction over this matter is appropriate pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states.

12. Venue is appropriate in this district pursuant to 28. U.S.C. § 1391(a), in that the *Harmon* Lawsuit is pending in this district and a substantial part of the events giving rise to the Circumstances occurred in this district. Further, the Policy was issued and delivered to Caraway & Broombaugh at its principal place of business in this judicial district.

## THE PARTIES

13. BIC is, and at all relevant times has been, a corporation organized under the laws of Delaware with its principal place of business in Connecticut.

14. Caraway & Broombaugh is an Illinois professional corporation with its principle place of business in Belleville, Illinois.

15. Upon information and belief, Broombaugh resides in Illinois.

16. Upon information and belief, J. Caraway resides in Illinois.

17. Upon information and belief, A. Caraway resides in Illinois.

18. Upon information and belief, Harmon resides in Illinois or Missouri. Harmon is the plaintiff in the *Harmon* Lawsuit and is joined as a defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that she may be bound by the judgment entered in this case. If Harmon executes a stipulation agreeing to be bound by any judgment entered herein, BIC will voluntarily dismiss her from this action.

19. Upon information and belief, Carlile resides in Illinois or Missouri. Carlile is the plaintiff in the *Carlile* Lawsuit and is joined as a defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that he may be bound by the judgment entered in this case. If Carlile executes a stipulation agreeing to be bound by any judgment entered herein, BIC will voluntarily dismiss him from this action

20. Upon information and belief, Wolf resides in Illinois or Missouri. Wolf made a written demand on Caraway & Broombaugh in connection with the Circumstances. Wolf is joined as a defendant herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that she may be bound by the judgment entered in this case. If Wolf executes a stipulation agreeing to be bound by any judgment entered herein, BIC will voluntarily dismiss her from this action.

21. Upon information and belief, the Kaczurs reside in Illinois. The Kaczurs made a written demand on Caraway & Broombaugh in connection with the Circumstances. The Kaczurs are joined as defendants herein as a necessary party pursuant to Rule 19 of the Federal Rules of Civil Procedure and so that he may be bound by the judgment entered in this case. If the Kaczurs execute a stipulation agreeing to be bound by any judgment entered herein, BIC will voluntarily dismiss them from this action.

22. Does 1-25 are currently unidentified clients of Caraway & Broombaugh who may also file lawsuits, make demands, or otherwise make "Claims" related to the Circumstances. BIC's investigation into the identities of Does 1-25 is ongoing. Upon information and belief, Does 1-25 likely reside in Illinois or Missouri.

## FACTUAL BACKGROUND

**A.  The Circumstances**

23. Caraway & Broombaugh is a law firm.

24. On January 30, 2023, Caraway & Broombaugh advised BIC that attorney J. Caraway abandoned the law firm and that there were issues with the client trust account.

25. In subsequent communications to BIC, Caraway & Broombaugh advised that J. Caraway took money from the client trust account and cannot be located.

### B. The *Wolf* Letter

26. On February 8, 2023, counsel for Wolf sent a letter to Caraway & Broombaugh (the "*Wolf* Letter").

27. The *Wolf* Letter demands $42,889.12 that was held in Caraway & Broombaugh's client trust account from the settlement of Wolf's workers' compensation lawsuit against Lashley Small Animal Hospital.

### C. The *Kaczur* Letter

28. On February 20, 2023, counsel for the Kaczurs sent a letter to Caraway & Broombaugh (the "*Kazaur* Letter").

29. The *Kaczur* Letter alleges that J. Caraway illegally converted assets and demands all physical and electronic files relating to the Kaszur's lawsuit being handled by Caraway & Broombaugh.

### D. The *Harmon* Lawsuit

30. On February 24, 2023, Harmon filed a Complaint styled *Terri Harmon v. Jason Caraway, and Caraway, Fisher & Broombaugh, P.C. and Autumn Caraway*, Case No. 23LA0205, in the Circuit Court Twentieth Judicial Circuit, St. Clair County, Illinois, against defendants J. Caraway, Fisher & Broombaugh, P.C., and A. Caraway, as Respondent in Discovery.

31. The *Harmon* Lawsuit alleges that Harmon retained the services of J. Caraway to represent her on a workers' compensation claim against her employer.

32. The *Harmon* Lawsuit further alleges, in part, that Harmon did not receive the majority of her $85,000 settlement that was held in Caraway & Broombaugh's bank accounts.

33. The *Harmon* Lawsuit alleges that J. Caraway abandoned Caraway & Broombaugh on or about January 26, 2023.

34. The *Harmon* Lawsuit alleges that J. Caraway misappropriated her settlement funds, and that he acted maliciously and willfully.

35. The *Harmon* Lawsuit alleges that J. Caraway committed fraud when he failed to pay or distribute settlement funds to Harmon.

36. The *Harmon* Lawsuit seeks relief from J. Caraway and "Caraway, Fisher, & Broombaugh, P.C."

37. With respect to Caraway, Fisher, & Broombaugh, P.C., the *Harmon* Lawsuit alleges negligent accounting in connection with the law firm's management of the client trust account.

38. The *Harmon* Lawsuit names A. Caraway as a respondent in discovery.

39. The *Harmon* Lawsuit alleges that A. Caraway is the wife of J. Caraway and an employee and/or agent of "Caraway, Fisher & Broombaugh, P.C."

40. The *Harmon* Lawsuit alleges that A. Caraway was responsible for taking care of bank accounts and performing accounting duties, including receiving and disbursing settlement funds and keeping track of deposits in operating accounts and firm trust accounts.

41. The *Harmon* Lawsuit alleges that A. Caraway was aware of the personal and business finances of J. Caraway and "Caraway, Fisher & Broombaugh, P.C.," and also of J. Caraway's spending habits.

42. The *Harmon* Lawsuit alleges that it was J. Caraway's practice of obtaining loans from individuals and corporations to keep his practice running, and that A. Caraway has knowledge and information of those loans and possible additional defendants.

**D.     The *Carlile* Lawsuit**

43.    On March 13, 2023, Carlile filed a Complaint styled *Robert Carlile v. Jason Caraway, and Caraway, Fisher & Broombaugh, P.C.*, Case No. 23LA0335, in the Circuit Court Twentieth Judicial Circuit, St. Clair County, Illinois, against defendants J. Caraway and Caraway, Fisher & Broombaugh, P.C.

44.    The *Carlile* Lawsuit alleges that Carlile retained the services of J. Caraway to represent him on a workers' compensation claim against his employer.

45.    The *Carlile* Lawsuit alleges that J. Caraway was negligent in connection with the settlement of Carlile's workers' compensation case.

46.    With respect to Caraway, Fisher, & Broombaugh, P.C., the *Carlile* Lawsuit alleges negligent accounting in connection with the law firm's management of the client trust account.

47.    The *Carlile* Lawsuit alleges that J. Caraway committed fraud when he failed to distribute the proper amount of funds to Carlile.

**E.     The *ARDC* Complaints**

48.    Through BIC's investigation, BIC discovered a Complaint filed on May 13, 2022, against J. Caraway by the Administrator of the Attorney Registration Disciplinary Commission (the "ARDC Complaint"). A true and copy of the ARDC Complaint is attached hereto as **Exhibit F**.

49.    The ARDC Complaint alleges that on June 22, 2017, J. Caraway deposited a client's $10,000 settlement check into Caraway & Broombaugh's client trust account.

50.    The ARDC Complaint alleges that between June 27, 2017 and March 22, 2019, J. Caraway used the client's money for his own personal use instead of using that money to pay lienholders.

51. The ARDC Complaint further alleges that between 2017 and 2021, J. Caraway did not prepare and maintain receipt and disbursement journal or contemporaneous ledger records for the subject trust account.

52. Upon information and belief, the ARDC is currently investigating the circumstances and will be filing a complaint against J. Caraway in the coming months.

## THE POLICY

53. The Policy is a Lawyers Professional Liability Policy issued to Caraway & Broombaugh, effective from June 1, 2022 to June 1, 2023.

54. Subject to conditions and exclusions, the Policy generally provides coverage for those amounts that "Insureds" become legally obligated to pay as "Damages" and "Claim Expenses" because of a "Claim" by reason of an act or omission in the performance of "Legal Services."

55. The Policy defines the term "Insured" to mean, in relevant part, the following:

**F.** **Insured** means the **Named Insured**, **Predecessor Firm** and the persons or entities described below:

   1. any lawyer, partnership, professional corporation, professional association, limited liability company or limited liability partnership who is or becomes a partner, officer, director, stockholder-employee, associate, manager, member or employee of the **Named Insured** during the **Policy Period** shown in the Declarations;
   2. any lawyer previously affiliated with the **Named Insured** or a **Predecessor Firm** as a partner, officer, director, stockholder-employee, associate, manager, member or salaried employee but only for **Legal Services** performed on behalf of the **Named Insured** or a **Predecessor Firm** at the time of such affiliation;
   
   * * *
   
   4. any person who is a former or current employee of the **Named Insured** or any **Predecessor Firm** and not a lawyer, but solely for services performed by such person within the course and scope of their employment by the **Named Insured** or any **Predecessor Firm** and provided that the services in dispute are **Legal Services** of the **Named Insured** or any **Predecessor Firm**;

       5.      the estate, heirs, executors, administrators, assigns, and legal representatives of an **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would have been provided coverage under this Policy; or

       6.      the spouse or domestic partner of an **Insured**; provided, however, coverage is only afforded to such spouse or domestic partner only for a **Claim** arising solely out of their status as such and where such **Claim** seeks damages from marital community property, jointly held property or property transferred from an **Insured** to the spouse or domestic partner. No coverage is provided for any act or omission of an estate, heir, legal representative, assign, spouse or domestic partner.

56.    The Policy defines the term "Predecessor Firm" to mean the following:

**L.**    **Predecessor Firm** means any sole proprietorship, partnership, professional corporation, professional association, limited liability corporation or limited liability partnership engaged in **Legal Services** and:

       1.      to whose financial assets and liabilities the firm listed as the **Named Insured** in the Declarations is the majority successor in interest; or

       2.      of which the **Named Insured** retained 50% or more of the lawyers; or

       3.      was previously deemed to be a **Predecessor Firm** under the lawyers professional liability policy issued by the **Insurer** immediately preceding this Policy.

57.    The Policy defines the term "Claim" to mean the following:

**B.**    **Claim** means a demand for money or services, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the **Insured** arising out of an act or omission, including **Personal Injury**, in the rendering of, or failure to render **Legal Services**.

58.    The Policy defines the term "Legal Services" to mean the following:

**H.**    **Legal Services** means:

       1.      those services, including pro bono services, performed by an **Insured** for others as a lawyer, arbitrator, mediator, title agent or other neutral fact finder or as a notary public. Any title agency or insurer, on whose behalf the Insured acts as title agent or designated issuing attorney, is not an **Insured** under this Policy unless such title agency is a wholly owned subsidiary of the **Named Insured**;

  2. those services performed by an **Insured** as an administrator, conservator, receiver, executor, guardian, trustee or in any other fiduciary capacity;

  3. those services performed by an **Insured** in their capacity as a member of a bar association, ethics, peer review, formal accreditation, licensing, or similar professional board or committee related to the legal profession; or

  4. those services performed by an **Insured** as an author, strictly in the publication or presentation of research papers or similar materials and only if the fees, royalties or other revenue generated from such work are not greater than $10,000.

  For the purpose of this definition, services performed by an **Insured** in a lawyer-client relationship on behalf of one or more clients shall be deemed **Legal Services** in the **Insured's** capacity as a lawyer, although such services could be performed wholly or in part by non-lawyers.

59. The Policy includes a "Funds Exclusion" that precludes coverage pursuant to the following language:

  This Policy does not apply:

      * * *

 **I.** **Funds Exclusion**

  to any **Claim** based on, or arising out of, or in any way involving the actual or alleged conversion, misappropriation or improper commingling of client funds;

60. The Policy includes a "Personal Profit Exclusion" that precludes coverage pursuant to the following language:

  This insurance does not apply to:

      * * *

 **K.** **Personal Profit Exclusion**

  to any **Claim** based on, or arising out of, or in any way involving any **Insured** having gained any personal profit or advantage to which he or she was not legally entitled;

61. The Policy contains an "Intentional Acts Exclusion" that precludes coverage pursuant to the following language:

  This insurance does not apply to:

A. **Intentional Acts**

to any **Claim** based on, or arising out of, or in any way involving any dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by an **Insured**; provided, however:

1. this exclusion shall not apply to **Personal Injury**;

2. the **Insurer** shall provide the **Insured** with a defense of such **Claim** unless or until the dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of the **Insurer's** rights under this Policy. Criminal proceedings are not covered under this Policy regardless of the allegations made against any **Insured**;

3. this exclusion will not apply to any **Insured** who is not found to have personally committed the dishonest, fraudulent, criminal, malicious act or omission or intentional wrongdoing by any trial verdict, court ruling, or regulatory ruling.

## COUNT I – DECLARATORY JUDGMENT
## (Funds Exclusion Applies)

62. Plaintiff incorporates and re-alleges Paragraphs 1 through 61 above as and for Paragraph 62, as if fully set forth herein.

63. The Funds Exclusion of the Policy precludes coverage for any "Claim" based on, or arising out of, or in any way involving the actual or alleged conversion, misappropriation or improper commingling of client funds.

64. The Circumstances forming the basis of the *Wolf* Letter and the *Kaczur* Letter are J. Caraway's conversion, misappropriation, and/or improper commingling of client funds.

65. The *Harmon* Lawsuit and the *Carlile* Lawsuit allege and seek relief from "Caraway, Fisher & Broombaugh, P.C." for the Circumstances: J. Caraway's conversion, misappropriation, and/or improper commingling of client funds.

66. Accordingly, the Funds Exclusion of the Policy precludes coverage for the *Wolf* Letter or any litigation that may arise from the *Wolf* Letter, the *Kaczur* Letter or any litigation that may arise from the *Kaczur* Letter, the claims asserted in the *Harmon* Lawsuit against Caraway & Broombaugh and A. Caraway, the claims asserted in the *Carlile* Lawsuit against Caraway & Broombaugh, and any other demands made or lawsuits filed by Does 1-25 regarding and/or related to the Circumstances.

67. BIC has and had no duty to defend or indemnify Caraway & Broombaugh, J. Caraway, Broombaugh, A. Caraway, or any other individual or entity qualifying as an "Insured" for the relief sought by Wolf or the Kaczurs,, or any other demands made or lawsuits filed by Does 1-25 regarding and/or related to the Circumstances.

68. BIC has and had no duty to indemnify Caraway & Broombaugh or A. Caraway for the *Harmon* Lawsuit or the *Carlile* Lawsuit.

WHEREFORE, Plaintiff, BIC, respectfully prays that this Honorable Court:

    a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

    b. Find and declare that the Funds Exclusion bars coverage under the Policy for the demands or lawsuits arising out of or related to the Circumstances;

    c. Find and declare that BIC has and had no duty under the Policy to defend and/or indemnify Caraway & Broombaugh, J. Caraway, Broombaugh, or A. Caraway for the *Wolf* Letter or any litigation that may arise from the *Wolf* Letter, the *Kaczur* Letter or any litigation that may arise from the *Kaczur* Letter, or any other demands made or lawsuits filed by Does 1-25 regarding and/or related to the Circumstances;

    d. Find and declare that BIC has and had no duty under the Policy to defend or indemnify Caraway & Broombaugh or A. Caraway for the *Harmon* Lawsuit or the *Carlile* Lawsuit; and

    e. Grant BIC such other and further relief that the Court deems proper under the facts and circumstances.

**COUNT II – DECLARATORY JUDGMENT**
**(Personal Profit Exclusion Applies)**

69. Plaintiff incorporates and re-alleges Paragraphs 1 through 61 above as and for Paragraph 69, as if fully set forth herein.

70. The Personal Profit Exclusion of the Policy, in relevant part, precludes coverage for any "Claim" based on, or arising out of, or in any way involving any "Insured" having gained any personal profit or advantage to which he or she was not legally entitled.

71. By taking clients' money without permission, J. Caraway gained a personal profit in the amount of the money he converted to which he was not legally entitled.

72. Accordingly, the Personal Profit Exclusion precludes coverage for the *Wolf* Letter or any litigation that may arise from the *Wolf* Letter, the *Kaczur* Letter or any litigation that may arise from the *Kaczur* Letter, the claims asserted in the *Harmon* Lawsuit against Caraway & Broombaugh and A. Caraway, the claims asserted in the *Carlile* Lawsuit against Caraway & Broombaugh, and any other demands made or lawsuits filed by Does 1-25 regarding and/or related to the Circumstances.

73. BIC has and had no duty to defend or indemnify Caraway & Broombaugh, J. Caraway, Broombaugh, A. Caraway, or any other individual or entity qualifying as an "Insured" for the relief sought by Wolf or the Kaczurs,, or any other demands made or lawsuits filed by Does 1-25 regarding and/or related to the Circumstances.

74. BIC has and had no duty to indemnify Caraway & Broombaugh or A. Caraway, for *Harmon* Lawsuit or the *Carlile* Lawsuit.

WHEREFORE, Plaintiff, BIC, respectfully prays that this Honorable Court:

    a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

    b.    Find and declare that the Personal Profit Exclusion bars coverage under the Policy for the demands or lawsuits arising out of or related to the Circumstances;

    c.    Find and declare that BIC has and had no duty under the Policy to defend and/or indemnify Caraway & Broombaugh, J. Caraway, Broombaugh, or A. Caraway for the *Wolf* Letter or any litigation that may arise from the *Wolf* Letter, the *Kaczur* Letter or any litigation that may arise from the *Kaczur* Letter, or any other demands made or lawsuits filed by Does 1-25 regarding and/or related to the Circumstances;

    d.    Find and declare that BIC has and had no duty under the Policy to defend or indemnify Caraway & Broombaugh or A. Caraway for the *Harmon* Lawsuit or the *Carlile* Lawsuit; and

    e.    Grant BIC such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III – DECLARATORY JUDGMENT
### (Intentional Acts Exclusion Applies)

75. Plaintiff incorporates and re-alleges Paragraphs 1 through 61 as and for Paragraph 75, as if fully set forth herein.

76. The Intentional Acts Exclusion precludes coverage for "Claims" based on, arising out of, or in any way involving dishonest, fraudulent, criminal, malicious acts or omissions, or intentional wrongdoing, by an "Insured."

77. The conversion of money from clients without permission is dishonest, fraudulent, criminal, malicious, and/or intentional.

78. The Intentional Acts Exclusion precludes coverage to J. Caraway and any other "Insured" found to have personally committed dishonest, fraudulent, criminal, and/or malicious acts or omissions, or intentional wrongdoing.

WHEREFORE, Plaintiff, BIC, respectfully prays that this Honorable Court:

    a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

    b.    Find and declare that the Intentional Act Exclusion bars coverage under the Policy for the demands or lawsuits arising out of or related to the Circumstances;

    c.    Find and declare that BIC has and had no duty under the Policy to defend and/or indemnify J. Caraway or any other "Insured" found to have personally committed dishonest, fraudulent, criminal, and/or malicious acts or omissions, or intentional wrongdoing, for the *Wolf* Letter or any litigation that may arise from the *Wolf* Letter, the *Kaczur* Letter or any litigation that may arise from the *Kaczur* Letter, or any other demands made or lawsuits filed by Does 1-25 regarding and/or related to the Circumstances;

    d.    Find and declare that BIC has and had no duty under the Policy to indemnify J. Caraway or any other "Insured" found to have personally committed dishonest, fraudulent, criminal, and/or malicious acts or omissions, or intentional wrongdoing, for the *Harmon* Lawsuit or the *Carlile* Lawsuit; and

    e.    Grant BIC such other and further relief that the Court deems proper under the facts and circumstances.

### COUNT IV – DECLARATORY JUDGMENT
### (<u>Insuring Agreement Not Satisfied – No "Claim" or "Legal Services"</u>)

79.    Plaintiff incorporates and re-alleges Paragraph 1 through 61 above as and for Paragraph 79, as if fully set forth herein.

80.    "Legal Services" are, in relevant part, those services performed by an Insured for others as a lawyer, arbitrator, mediator, title agent, neutral fact finder, fiduciary, administrator, conservator, receiver, executor, guardian, trustee, member of a board or committee related to the legal profession, or author (in a limited capacity).

81.    The Insuring Agreement of the Policy states that the Policy provides coverage for those amounts that the "Insured" becomes legally obligated to pay as "Damages" and "Claim Expenses" because of a "Claim" *by reason of an act or omission in the performance of "Legal Services."*

82. Money that "Insureds" may become legally obligated to pay, and "Claim Expenses" incurred by or on behalf of "Insureds," based on J. Caraway's taking of clients' money from a trust account without permission, would not be by reason of an act or omission in the performance of "Legal Services."

83. The Policy defines "Claim" as a demand for money or services, including the service of suit or the institution of any alternative dispute resolution proceeding, received by the Insured arising out of an act or omission, including "Personal Injury," *in the rendering of, or failure to render "Legal Services."*

84. A lawyer taking a client's money from a client trust account without permission is not an act or omission committed in the rendering of or failure to render a "Legal Service" as that term is defined by the Policy, such that demands and lawsuits seeking relief based on J. Caraway's taking of clients' money from a trust account without permission, would not qualify as a "Claim."

85. A law firm's management of its client trust accounting, and misconduct leading to a cause of action for negligent accounting, do not qualify as a "Claim."

86. The Insuring Agreement of the Policy is not satisfied.

87. BIC has and had no duty to defend or indemnify Caraway & Broombaugh, J. Caraway, Broombaugh, A. Caraway, or any other individual or entity qualifying as an "Insured" for the relief sought by Wolf or the Kaczurs,, or any other demands made or lawsuits filed by Does 1-25 regarding and/or related to the Circumstances.

88. BIC has and had no duty to indemnify Caraway & Broombaugh or A. Caraway, for the *Harmon* Lawsuit or the *Carlile* Lawsuit.

WHEREFORE, Plaintiff, BIC, respectfully prays that this Honorable Court:

    a. Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

  b. Find and declare that money "Insureds" may become legally obligated to pay, and "Claim Expenses" incurred by or on behalf of "Insureds," based on J. Caraway's taking of clients' money from a trust account without permission, would not be by reason of an act or omission in the performance of "Legal Services," such that the Insuring Agreement of the Policy is not satisfied;

  c. Find and declare that demands and lawsuits seeking relief based on J. Caraway's taking of clients' money from a trust account without permission, would not qualify as a "Claim," such that the Insuring Agreement of the Policy is not satisfied;

  d. Find and declare that a cause of action for negligent accounting is not a "Claim," such that the Insuring Agreement of the Policy is not satisfied;

  e. Find and declare that BIC has and had no duty under the Policy to defend and/or indemnify Caraway & Broombaugh, J. Caraway, Broombaugh, or A. Caraway for the *Wolf* Letter or any litigation that may arise from the *Wolf* Letter, the *Kaczur* Letter or any litigation that may arise from the *Kaczur* Letter, or any other demands made or lawsuits filed by Does 1-25 regarding and/or related to the Circumstances;

  f. Find and declare that BIC has and had no duty under the Policy to defend or indemnify Caraway & Broombaugh or A. Caraway for the *Harmon* Lawsuit or the *Carlile* Lawsuit; and

  g. Grant BIC such other and further relief that the Court deems proper under the facts and circumstances

Dated this 17th day of May, 2023.

                Respectfully submitted,

                /s/ Jeremy S. Macklin
                One of the Attorneys for BERKLEY INSURANCE COMPANY

Jeremy Macklin (6303870)
TRAUB LIEBERMAN
STRAUS & SHREWSBERRY, LLP
71 S. Wacker Dr., Suite 2110

Chicago, Illinois 60603
312.332.3900 (t)
312.332.3908 (f)
jmacklin@tlsslaw.com